IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DARREN M. LEE, on behalf of himself and those similarly situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:01-CV-1179-P |
| AMERICAN AIRLINES, INC., | § § § | |
| Defendant. | § § | |



## MEMORANDUM OPINION AND ORDER

Now before the Court is Defendant American Airlines, Inc.'s Motion for Partial Judgment on the Pleadings or, in the Alternative, Motion for Partial Summary Judgment, filed November 26, 2001.[1] After a thorough review of the evidence, the pleadings, the Parties' briefs, and the applicable law, for the reasons set forth below, Defendant's Motion for Partial Judgment on the Pleadings is hereby GRANTED.

## BACKGROUND

This case arises out of an alleged class action brought by plaintiff Darren M. Lee ("Plaintiff"), on behalf of himself and all other similarly-situated ticketed passengers on American Airlines ("American" or "Defendant") Flight 100, claiming damages as a result of delay caused when his flight did not depart New York's JFK International Airport for London's

---

[1] Plaintiff filed his Response to Defendant's Motion for Partial Judgment on the Pleadings, or in the Alternative, Motion for Partial Summary Judgment on December 17, 2001 and Defendant American Airlines, Inc. filed its Reply Brief in Support of its Motion for Partial Judgment on the Pleadings or, in the Alternative, Motion for Partial Summary Judgment, on January 2, 2002.



Heathrow International Airport at its scheduled departure time of 6:35 p.m. on Friday, May 18, 2001. (*See* Pls.' Class Action Compl. ("Compl.") at 1-15.)

According to the Complaint, Flight 100 was originally boarded an hour late and the passengers, including Plaintiff, were told take-off was imminent. (Compl. ¶ 4.1) However, after waiting in the aircraft for some time without departure, the passengers were informed that the flight was canceled and that the passengers would have to disembark and wait for another aircraft to take them to London. (Compl. ¶¶ 4.2-4.5.)

Upon arrival at a new gate, which was under construction, without adequate seating, and nearing ninety degrees, the passengers waited - for several hours (until approximately 1:00 a.m.) - before learning that this flight was also canceled. (Compl. ¶¶ 4.6-4.11.) During their wait, Plaintiff complains that American's gate agents were rude and unhelpful. Plaintiff alleges that the passengers were denied information about the status of their flight, were subjected to inadequate bathroom facilities, and were unable to get adequate food or drink during this lengthy wait. (Compl. ¶¶ 4.7, 4.9.) At times, there was no one attending the gate area at all and thus, no information provided to the passengers. (Compl. ¶ 4.9.) Because the gate attendants (when they were attending the gate) were continually assuring the passengers that their flight would be boarding "in twenty minutes," people were missing connecting flights and missing the opportunity to secure seats on other flights. (Compl. ¶¶ 4.7 - 4.8, 4.10 - 4.11.)

After American finally notified the passengers that this flight was cancelled, the passengers, including Plaintiff, were required to line-up at the gate to book reservations on a new flight for the following day, which took many of the passengers over an hour. (Compl. ¶¶ 4.12 - 4.13.) Thereafter, the passengers, including Plaintiff, had to retrieve their baggage. (Compl. ¶

4.13.) The baggage claim that was used was defective and caused many of the bags to rip and be dumped of their contents. (Compl. ¶ 4.13.)

Finally, the passengers, including Plaintiff, were transported in one van to a hotel, which could not accommodate all of the people. (Compl. ¶ 4.14.) The American-supplied van refused to transport the people without rooms to another hotel, so Plaintiff was required (at three o'clock in the morning) to secure his own transportation to another hotel. (Compl. ¶ 4.15.)

Upon arrival at the airport the next day for boarding of the re-booked flights, many passengers learned that American had failed to re-book them on the substitute flights. (Compl. ¶ 4.19.)

Defendant has moved the Court for partial judgment on the pleadings, or in the alternative, partial summary judgment on Plaintiff's claim for recovery of unspecified non-economic damages for his "inconvenience" caused by the delay of Flight 100. (*See* Def.'s Mot. for Partial J. ("Def.'s Mot.") at 1.) Defendant asserts that since Lee's claims are brought under Article 19 of the Warsaw Convention for American's alleged delay in transporting him to London as scheduled, any inconvenience damages are not recoverable under the substantive law. (*See id.* at 1-2.)

## DISCUSSION

I.   **Standard for Motion for Judgment on the Pleadings.**

Under Rule 12(c) of the Federal Rules of Civil Procedure, after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). "A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered

by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co., Inc. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir.1990) (per curiam); *see also Voest-Alpine Trading USA Corp. v. Bank of China,* 142 F.3d 887, 891 (5th Cir. 1998); *Halkias v. General Dynamics Corp.,* 825 F. Supp 123, 124 (N.D. Tex. 1993). The standard to be applied when analyzing a Rule 12(c) motion is identical to the standard used for a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Dolenz v. Akin,* No. CIV.A.3:95-CV-1605-P, 1997 WL 21388, at *2 (N.D. Tex. Jan. 14, 1997), *aff'd*, 129 F.3d 612 (5th Cir.1997), *cert. denied,* 118 S. Ct. 1365 (1998); *See also* 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1368 (2d. Ed.1990 & Supp. 2002) n. 34 (citing numerous cases holding that the standard applied under 12(c) is the same applied under 12(b)(6)).

The standard for dismissal under Rule 12(b)(6) is a familiar one. In construing a motion to dismiss, a court must presume all factual allegations in the complaint to be true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff. *See Fernandez-Montes v. Allied Pilots Ass'n,* 978 F.2d 278, 284 (5th Cir. 1993). The complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45 (1957). "However, 'the complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1995) (citation omitted). Moreover, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."

*Fernandez-Montes,* 987 F.2d at 284. With these standards in mind, the Court now turns to analyze the pleadings in this case.

## II.   Legal Analysis.

The Convention for the Unification of Certain Rules Relating to International Transportation by Air, commonly referred to as the "Warsaw Convention" applies to "all international transportation of persons, baggage, or goods performed by aircraft for hire." *See* 49 U.S.C. § 40105.[2] Under the Warsaw Convention, an air carrier is liable in three situations:

> (1) "for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking." *Id.* art. 17;
>
> (2) "for damage sustained in the event of the destruction or loss of, or of damage to, any checked baggage or any goods, if the occurrence [that] caused the damage so sustained took place during the transportation by air." *Id.* art. 18(1); and
>
> (3) "for damage occasioned by delay in the transportation by air of passengers, baggage, or goods." *Id.* art. 19.

Of the three categories of damages permitted, it is undisputed that only Article 19 is implicated here.[3]

In 1991, the United States Supreme Court in *Eastern Airlines, Inc. v. Floyd* held that "damage" under Article 17 of the Warsaw Convention does not include recovery for mental or

---

[2] It is undisputed that the Warsaw Convention applies in this lawsuit.

[3] Article 22 of the Warsaw Convention sets forth monetary limits on the liability of air carriers under the three situations set forth above. *See id.* art. 22. Article 24 states that "[i]n the cases covered by articles 18 and 19 any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention." *Id.* art. 24(1).

psychic injuries unaccompanied by physical injury. 499 U.S. 530, 532 (1991).[4] American argues that Plaintiff is not entitled to recover for his "inconvenience" damages, including: (1) being trapped in a 'holding area' without adequate food, water, restroom facilities, and information regarding the status of Flight 100; (2) being forced to spend the night in substandard, dirty, and unsafe motels; (3) Being subjected to repeated misrepresentations, both intentional and negligent, by American's agents and representatives regarding the status of Flight 100, the need for and the availability of alternative means of transportation; (4) being required, without adequate assistance from American, to obtain alternative means of transportation; and (5) loss of a refreshing and memorable vacation. (See Def.'s Mot. at 2.)[5] American argues that these "inconvenience damages" amount to nothing more than damages for pure mental anguish, which

---

[4] Neither of the Parties dispute that the Supreme Court's decision forbidding recovery for mental anguish absent physical injury under Article 17 is equally applicable to claims asserted under Article 19. Therefore, the Court does not decide whether the *Floyd* rationale applies to cases arising under Article 19.

[5] In this case, Plaintiff seeks recovery of damages for:
    a. Delay;
    b. *Inconvenience, including, but not limited to:*
        *i. Being trapped in a 'holding area' without adequate food, water, restroom facilities, and information regarding the status of Flight 100,*
        *ii. Being forced to spend the night in substandard, dirty, and unsafe motels,*
        *iii. Being subjected to repeated misrepresentations, both intentional and negligent, by American's agents and representatives regarding the status of Flight 100, the need for and the availability of alternative means of transportation, and*
        *iv. Being required, without adequate assistance from American, to obtain alternative means of transportation;*
    c. Airfare price differentials;
    d. Alternate transportation costs;
    e. Lodging expenses;
    f. Phone calls;
    g. Meals;
    h. Out-of-pocket expenses;
    i. Loss of reasonably foreseeable business opportunities;
    j. Loss of prepaid and/or nonrefundable vacation expenses;
    k. *Loss of a refreshing and memorable vacation;*
    l. All other contemplated and foreseeable damages; and
    m. Reasonable and necessary attorneys fees.
(Compl. ¶ 7.2)

have been expressly forbidden by the United States Supreme Court in *Floyd*. *See Floyd*, 499 U.S. 530. American also argues that the analysis used in *Daniel v. Virgin Atlantic Airways Ltd.*, the primary case on which Plaintiff relies, is flawed in several key respects and should not be used by this Court.

Plaintiff denies that he is simply re-characterizing his mental anguish damages as inconvenience damages and relies on *Daniel v. Virgin Atlantic Airways, Ltd.*, in which the United States District Court for the Northern District of California resolved this issue in the plaintiffs' favor. Specifically, the *Daniel* Court held that because "inconvenience" damages "could conceivably encompass economic damages," they are "a compensable element of damages for delay" under Article 19 of the Warsaw Convention. 59 F. Supp. 2d 986, 993-94 (N.D. Cal. 1998). However, the *Daniel* court did dismiss the plaintiffs' claims for anxiety, frustration, humiliation, and mental anguish pursuant to *Floyd*. *Id.* at 992. At least one other court has permitted recovery of "inconvenience damages" under Article 19. *See Harpalani v. Air India, Inc.*, 622 F. Supp. 69, 71 (N.D. Ill. 1985) (allowing plaintiff to sue for damages of inconvenience and monetary loss).

The Warsaw Convention preempts state laws for claims covered by it, while at the same time enabling passengers to sue directly under its terms. *Pakistan Arts and Entertainment Corp. v. Pakistan Int'l Airlines Corp.*, 660 N.Y.S.2d 741, 743 (1997). The Warsaw Convention was adopted when the airline industry was in its infancy, and was enacted with two primary goals in mind. *Id.* The first was to establish a uniform procedure to deal with claims arising out of international air transportation. *Id.* The second was to limit airline liability. *Id.* Rather than limit the types of damages that were recoverable, the parties to the Warsaw Convention placed a

ceiling on the amount of proven damage that could be recovered. *See Sayed v. Transmediterranean Airways*, 509 F. Supp. 1167, 1169 (W.D. Mich. 1981). "The alternative would result in recovery of different elements of damage depending upon the country in which the action for breach was instituted and uniformity could soon be lost." *Id.*

The Warsaw Convention does not specify what types of "damages" are recoverable thereunder. Thus, the courts must determine what constitutes legally cognizable harm for delay under Article 19. And the case law is unclear and varied as to what types of damages are recoverable in these Article 19 cases. *See* Tory A. Weigand, *The Modernization of the Warsaw Convention and the New Liability Scheme for Claims Arising Out of International Flight*, 84 Mass. L. Rev. 175, 188 (2000) ("The scope of recoverable damages under Article 19 remains uncertain.")

The Supreme Court dealt with this issue in *Floyd,* where it held that Article 17 of the Warsaw Convention does not allow recovery for purely psychic injuries in the absence of physical injury. In making its determination, the Court reasoned that at the time the Warsaw Convention was drafted, many of the signatory countries to the Convention did not allow recovery for purely psychic injury. *See Floyd*, 499 U.S. at 544. The Court thus concluded that precluding recovery for mental injuries in the absence of physical injury "better accords with the Warsaw Convention's stated purpose of achieving uniformity of rules governing claims arising from international air transportation." *Id.* at 552.

Because the Warsaw Convention is premised upon a "contract" between the passenger and the airline, courts permit recovery of economic damages arising out of the delay itself (*i.e.*

rental, hotel accommodation, taxis, etc.) under Article 19. *See Pakistan Arts and Entertainment Corp.*, 660 N.Y.S.2d at 743; Tory A. Weigand, *supra*, at 188.

Plaintiff acknowledges that damages for emotional distress, absent physical injury, are not available under the Warsaw Convention. (Pl.'s Resp. at 8.) Yet Plaintiff argues that the damages he seeks to recover, which he terms "inconvenience damages," can be quantified and are a type of economic loss. (*Id.* at 9-10.)

The Court need not, and does not, determine as a matter of law whether "inconvenience" damages are recoverable. Instead, the Court must determine whether Plaintiff's damages for "inconvenience," as pled in his Complaint, fall under the rubric of "mental injuries," which are not recoverable. In this case, Plaintiff's inconvenience allegations arise from the discomfort, annoyance, and irritation Plaintiff and the other passengers suffered as a result of their delay. Plaintiff seeks damages for the inconvenience associated with (1) having to remain in the holding area without adequate food, water, restroom facilities, and information; (2) having to stay in a substandard motel; (3) having to "be subjected" to misinformation about the flight status, (4) having to obtain alternative means of transportation; and (5) losing out on a refreshing, memorable vacation. The damages arising from this inconvenience are not easily quantifiable and do not result in real economic losses. Plaintiff has merely recharacterized his mental anguish damages as "inconvenience" damages. Even the *Daniel* case - the case Plaintiff relies on throughout his argument - recognizes that to be recoverable, the "inconvenience" damages must "encompass economic damages." *Daniel*, 59 F. Supp. 2d at 992.

Because the damages described in Plaintiff's Complaint as "inconvenience" damages amount to damages for mental injuries, the Court hereby GRANTS American's Motion for Partial Judgment on the Pleadings.

SO ORDERED, this _____2nd_____ day of ~~June~~ July, 2002.

_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE